Filed 6/14/21  P. v. Sosa CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073591 |
| v. | (Super.Ct.No. FVA13536) |
| LUIS A. SOSA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Elia V. Pirozzi, Judge.  Affirmed.

Karlin & Karlin and Marc A. Karlin for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Adrian Contreras and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Luis A. Sosa appeals from the trial court's order denying his Penal Code[1] section 1473.7 motion to vacate his guilty plea and conviction. He argues the trial court erred by denying the motion because he had met the requirements entitling him to relief. Specifically, he claims that it is reasonably probable that he would not have pleaded guilty, but would have defended against the charges, if he had meaningfully understood the adverse immigration consequences of his plea. We find substantial evidence supports a finding that defendant would have taken the plea despite the immigration consequences, and therefore affirm the trial court's order.

## FACTUAL AND PROCEDURAL HISTORY

A. <u>FACTUAL BACKGROUND</u>

Defendant is a 50-year-old citizen of El Salvador. He entered the United States in approximately 1989 and resided in the United States for about 30 years as a legal permanent resident.

On November 4, 1992, following a valid vehicle stop, defendant, who was 22 years old at the time, was found in possession of five small baggies with cocaine, four small baggies with heroin, a beeper, and money. Defendant admitted selling drugs. At the time he committed his offenses, he had been in the United States about three and a half years and had a common law partner and a two-month-old child. Both his parents and two sisters resided in El Salvador at the time.

---

[1] All future statutory references are to the Penal Code.

B.    PROCEDURAL HISTORY

On November 6, 1992, a felony complaint was filed charging defendant with two counts of possession for sale of a controlled substance, involving, respectively, cocaine and heroin (Health & Saf. Code, § 11351; counts 1 & 2).  Defendant was arraigned on November 9, 1992, and was advised that " 'if he is not a citizen [of the United States], the conviction of the offense, with which he is charged, may lead to his deportation, exclusion from admission to this country or denial of naturalization.' "

On November 20, 1992, defendant entered into a negotiated plea, in which he agreed to plead guilty to count 1, and in return count 2 would be dismissed and he would be placed on probation.  Prior to pleading guilty, defendant initialed and signed a plea agreement form.  In pertinent part, defendant initialed paragraph 6C, which stated " 'If I am not a citizen of the United States I could be deported or excluded from admission to the United States or denied naturalization.' "  Defendant was represented by counsel and was provided the services of a Spanish interpreter.  Both defense counsel and defendant's interpreter signed the plea agreement form.  After executing the plea form, defendant pleaded guilty to count 1.  In return, count 2 was dismissed, and defendant was placed on probation for a period of three years on various terms and conditions of probation, including serving 90 days in county jail.

Due to his felony conviction for possession of cocaine for sale, on December 18, 2013, defendant was placed in removal proceedings by the United States Department of Homeland Security.

3

On May 28, 2019, defendant filed a motion to vacate his guilty plea and conviction pursuant to section 1473.7, or, in the alternative, section 1016.5. Defendant maintained that when he entered his plea, he did not meaningfully understand that his plea would render his legal permanent resident status void and bar him from any immigration relief in the future. He further claimed that his attorney did not properly advise him that his plea would have certain negative consequences to any future immigration applications he might file.

In support of his motion, defendant attached his own supporting declaration, in which he maintained that he was a citizen of El Salvador, that he was married to a United States citizen,[2] and that he had lived in the United States for nearly 30 years. He also stated that prior to pleading guilty, he had briefly discussed the matter with his attorney; however, his attorney never advised him that the guilty plea would permanently and negatively affect his immigration status, including his permanent legal resident status, and never advised him to seek out an immigration attorney. He asserted that he did not meaningfully understand the consequences of his plea, and that if he had, he never would have pleaded guilty. He claimed that instead he would have accepted a plea with a longer custody term in order to avoid the immigration consequences or proceeded to trial.

The People opposed the motion, arguing defendant's declaration failed to state a claim for relief, and that to the extent section 1473.7 entitles defendant to relief, it is unconstitutional. The People also asserted that the record showed defendant was advised

_____

[2] At the hearing on his motion to vacate his guilty plea, defendant admitted that he was neither married then nor at the time he committed his crimes.

4

of the adverse immigration consequences on November 9 and 20, 1992, by the court and his trial counsel.

A hearing on defendant's motion to vacate his guilty plea was held on July 19, 2019. Defendant testified at the hearing that he has been a legal permanent resident for approximately 30 years, had three children who were citizens of the United States, and that he was scheduled for an immigration removal hearing in January 2020. He claimed that the first and only time he met with his attorney prior to his 1992 guilty plea was at the plea hearing itself and that his attorney spent 10 or 15 minutes speaking with him. In that time, defendant stated that his attorney did not discuss the immigration consequences of the plea and that his attorney did not discuss with him the possibility of serving a longer term to avoid adverse immigration consequences. He also claimed he did not understand what exclusion from the United States meant and the difference between citizenship and naturalization. He further asserted he did not recall being advised of the negative immigration consequences during the taking of the plea hearing. Defendant maintained that if he had known of the immigration consequences of the plea, he never would have taken the deal.

On cross-examination, defendant acknowledged his memory was not the same as it would have been in November 1992 and that he could not remember having been arraigned at a separate proceeding, or being told a conviction might lead to deportation, exclusion, and denial of naturalization. He did not recall being advised of his constitutional rights prior to pleading guilty. Defendant also could not recall the name,

5

sex, or race of his attorney. He stated that he did not inform his attorney he wanted more custody time to avoid any negative immigration consequences or that immigration was more important than jail or prison. He claimed that if he had been told that his plea could lead to deportation, exclusion, or denial of naturalization, he would have asked for clarification. He would have asked whether there was some other plea deal that would not have led to adverse immigration consequences and would have also asked his attorney for advice. Defendant did not recall initialing or signing the plea agreement form or being advised of any component of his plea.

Following argument, the trial court denied defendant's motion to vacate under sections 1473.7 and 1016.5. The court found that defendant failed to establish a credible, independently verifiable prima facie showing of a reasonable probability that he would not have pleaded guilty but for the alleged failure to advise of the adverse immigration consequences of his plea. The court explained that defendant's failure to show prejudice was "fatal" to his claim under the federal and state Constitutions and also statutorily under section 1473.7. The court noted that section 6C of the plea agreement form, which defendant initialed with the assistance of an interpreter, stated defendant had been advised of the potential immigration consequences of his plea. Based on the review of the record, the court also concluded defendant did not show his attorney's performance fell below objective professional norms.

The court found defendant was "honest," "forthcoming," "straightforward," and a "very decent human being," but also determined his testimony was lacking in credibility

6

in several respects.  First, the court concluded there was no evidence that defendant's counsel ever misadvised him, only that he did not thoroughly advise defendant of all immigration consequences, which advisal was not required in 1992.  Second, the court opined that documentary evidence refuted defendant's contention that he was not advised of the immigration consequences of his plea.  Lastly, the court noted that defendant's memory of the plea was "sparse and minimal at best" and defendant had little recollection of what he was told at the time of his arraignment and plea.

The court further found that defendant's statement that he would have rejected the plea if he had been thoroughly advised was "somewhat self-serving."  Specifically, as to the question of prejudice, the court concluded that given defendant's exposure of four to five years in state prison, it appeared unlikely defendant would have risked that potential sentence and given up probation and a term of only 90 days in custody.  In addition, the court observed there was insufficient evidence the charges would have permitted a disposition that would not have affected defendant's immigration status and that defendant failed to corroborate his claims with objective, independent evidence.

## DISCUSSION

Defendant argues the trial court erred in denying his section 1473.7 motion to vacate his guilty plea and conviction.  He maintains it is reasonably probable that he would not have pleaded guilty, and would instead have defended against the charges, if he had meaningfully understood the immigration consequences of his plea.

7

A.    STANDARD OF REVIEW

Our Supreme Court recently clarified the standard of review for motions brought pursuant to section 1473.7, subdivision (a)(1).  In *People v. Vivar* (2021) 11 Cal.5th 510 (*Vivar*), the Supreme Court endorsed the independent standard of review to all prejudice determinations under section 1473.7, subdivision (a)(1).  (*Vivar*, at pp. 523-525.)  "A standard of independent review—the same standard governing our review of these claims on habeas corpus—is most consistent with section 1473.7's purpose:  to offer relief to those persons who suffered 'prejudicial error' but are 'no longer imprisoned or restrained' and for that reason alone are unable to pursue relief on habeas corpus. [Citation.]"  (*Id*. at p. 525.)  " '[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' [Citation.]  When courts engage in independent review, they should be mindful that ' "[i]ndependent review is not the equivalent of de novo review . . . ." '  [Citation.]  An appellate court may not simply second-guess factual findings that are based on the trial court's own observations.  [Citations.]"  (*Id*. at p. 527, italics omitted.)  In other words, we should give particular deference to factual findings based on the trial court's personal observations of witnesses.  (*Id*. at pp. 527-528.)  Where "the facts derive entirely from written declarations and other documents, however, there is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding.  [Citation.]

8

Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Id*. at p. 528.)

B.     SECTION 1473.7

Former section 1473.7, which became effective on January 1, 2017, allowed "[a] person no longer imprisoned or restrained" to file a motion to vacate a conviction or sentence if "[t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (Stats. 2016, ch. 739, § 1.) "Courts routinely interpreted the new statute to mean that in order to vacate a conviction, a person had to prove an ineffective assistance of counsel (IAC) claim under well-established standards. (*Strickland v. Washington* (1984) 466 U.S. 668 (*Strickland*)." (*People v. Mejia* (2019) 36 Cal.App.5th 859, 861 (*Mejia*); *People v. Camacho* (2019) 32 Cal.App.5th 998, 1005 (*Camacho*).)

The Legislature, however, amended the statute, effective January 1, 2019, "to provide clarification to the courts regarding Section 1473.7 of the Penal Code to ensure uniformity throughout the state and efficiency in the statute's implementation." (Stats. 2018, ch. 825, § 1, subd. (b); *Camacho*, *supra*, 32 Cal.App.5th at p. 1007; *Mejia*, *supra*, 36 Cal.App.5th at p. 869.) Of significance here, a sentence was added to subdivision (a)(1) stating, "[a] finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (Stats. 2018, ch. 525, § 2; *Mejia*, at pp. 862,

9

869; *Camacho*, at p. 1006; see *People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1133 (*DeJesus*).) A new subdivision (e)(4) directed, "When ruling on a motion under paragraph (1) of subdivision (a), the only finding that the court is required to make is whether the conviction is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (Stats. 2018, ch. 825, § 2, subd. (e)(4).)

Under the amended section 1473.7, a defendant is no longer required to prove an ineffective assistance of counsel claim in order to obtain relief. (*Mejia*, *supra*, 36 Cal.App.5th at p. 871; *Camacho*, *supra*, 32 Cal.App.5th at p. 1008.) Thus, a defendant no longer must prove that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. (*Camacho*, at p. 1008.) This means too that courts are not limited to the standard for prejudice used in ineffective assistance of counsel claims—"a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (*Strickland v. Washington* (1984) 466 U.S. 668, 694)—when ruling on motions brought under section 1473.7. (*Camacho*, at p. 1009.)

"Rather, a superior court is required to make a finding of legal invalidity if the defendant simply proves by a preponderance of the evidence a 'prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of

guilty or nolo contendere.' (§ 1473.7, subd. (a)(1).)" (*Mejia*, *supra*, 36 Cal.App.5th at p. 871, italics omitted.) "[T]he focus of the inquiry in a section 1473.7 motion is on the 'defendant's own error in . . . not knowing that his plea would subject him to mandatory deportation and permanent exclusion from the United States.' [Citation.]" (*Mejia*, at p. 871, italics omitted, quoting *Camacho*, *supra*, 32 Cal.App.5th at p. 1009.)

As our Supreme Court recently explained, prejudicial error "means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences. When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances. [Citation.] Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Vivar*, *supra*, 11 Cal.5th at pp. 529-530.)

"The probability of obtaining a more favorable result at trial is one factor to consider in evaluating prejudice, but it is not necessarily the determinative factor." (*People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 78 (*Ogunmowo*); *People v. Martinez* (2013) 57 Cal.4th 555, 559 (*Martinez*).) As the United States Supreme Court explained in *Lee v. United States* (2017) __ U.S. __ [137 S.Ct. 1958, 1967] (*Lee*), "it could be reasonably probable that a defendant 'would have rejected any plea leading to deportation—even if it shaved off prison time—in favor of throwing a "Hail Mary" at

11

trial,' where 'avoiding deportation was the determinative factor for [the defendant].' "
(*Ogunmowo*, at p. 78, italics omitted; accord, *Mejia*, *supra*, 36 Cal.App.5th at p. 871;
*Camacho*, *supra*, 32 Cal.App.5th at pp. 1010-1011.) " '[C]ommon sense . . . recognizes
that there is more to consider than simply the likelihood of success at trial.  The decision
whether to plead guilty also involves assessing the respective consequences of a
conviction after trial and by plea.  [Citation.]  When those consequences are, from the
defendant's perspective, similarly dire, even the smallest chance of success at trial may
look attractive.'  (*Lee v. United States*, *supra*, [__] U.S. __ [137 S.Ct. at p. 1966].)"
(*Mejia*, at p. 872; *Camacho*, at pp. 1010-1011.)

As *Camacho* discussed, our Supreme Court has found that " ' "[c]riminal
convictions may have 'dire consequences' under federal immigration law [citation] and
that such consequences are 'material matters' [citation] for noncitizen defendants faced
with pleading decisions." [Citation.]  "[A] deported alien who cannot return 'loses his
job, his friends, his home, and maybe even his children, who must choose between their
[parent] and their native country . . . .' " [Citation.]  Indeed, a defendant "may view
immigration consequences as the only ones that could affect his calculations regarding
the advisability of pleading guilty to criminal charges" [citation], such as when the
defendant has family residing legally in the United States.  "Thus, even before the
Legislature expressly recognized [in section 1016.5, subdivision (d)] the unfairness
inherent in holding noncitizens to pleas they entered without knowing the consequent
immigration risks [citation], we held that justice may require permitting one who pleads

12

guilty 'without knowledge of or reason to suspect [immigration] consequences' to withdraw the plea." [Citation.]' " (*Camacho*, *supra*, 32 Cal.App.5th at p. 1010, quoting *Martinez*, *supra*, 57 Cal.4th at p. 563.)

In determining whether the defendant would insist on an alternative resolution, the focus is not placed on "whether the prosecution would actually 'have offered a different bargain'—rather" the focus is on whether "the defendant" could "expect or hope a different bargain" was possible. (*Vivar*, *supra*, 11 Cal.5th at p. 529, italics omitted.) "[W]hen a defendant seeks to withdraw a plea based on inadequate advisement of immigration consequences," he or she must corroborate "such assertions with ' "objective evidence." ' " (*Id*. at p. 530.)

C.    ANALYSIS

Assuming, without deciding, defendant had established his counsel erred, he also needed to show prejudice. We independently find defendant's claim fails because he has not shown prejudice. At the outset, we note defendant's motion to vacate was based primarily on his declaration and then oral testimony that he was not advised about the immigration consequences of the plea and that he did not understand those consequences.

To show prejudice, a moving party must at minimum "provide a declaration or testimony stating that he or she would not have entered into the plea bargain if properly advised." (*Martinez*, *supra*, 57 Cal.4th at p. 565.) Once they provide such a declaration, "[i]t is up to the trial court to determine whether the defendant's assertion is credible, and the court may reject an assertion that is not supported by an explanation or other

13

corroborating circumstances." (*Ibid.*)  In assessing the credibility of a moving party's claim they would not have entered a plea but for some error, as previously noted, a court may look at a number of factors, including the moving party's history with the United States, the length of their residency, their family ties here versus in their country of origin, the presence or absence of other plea offers, the strength of the evidence supporting the underlying conviction, and whether the defendant had reason to believe that the charges would allow an immigration-neutral bargain that a court would accept. (*Vivar*, *supra*, 11 Cal.5th at pp. 529-530; *Martinez*, *supra*, 57 Cal.4th at p. 568; *Mejia*, *supra*, 36 Cal.App.5th at p. 872.)  A defendant's probability of success at trial also forms part of this inquiry, as a defendant would be less likely to insist on going to trial if the consequences of trial lead to a worse sentence than compared to the plea.  (See *Lee*, *supra*, __ U.S. __ [137 S.Ct. at p. 1966].)

Under these standards, the trial court was within its authority to find defendant's declaration and his testimony was not credible and self-serving for lack of corroborating or objective evidence.  (See *Vivar*, *supra*, 11 Cal.5th at pp. 529-530.)  Defendant can point to no contemporaneous corroborating evidence to support his claim that he would not have pleaded guilty if properly advised of the adverse immigration consequences. Defendant never attached a declaration from his attorney who had negotiated the plea on defendant's behalf or call the attorney to testify.  He also did not call the prosecutor who accepted the plea or the interpreter to testify at the hearing.  There was no evidence regarding the extent of plea negotiations, or whether defendant "expect[ed] or hope[d] a

different bargain" was possible.  (*Vivar*, at p. 529.)  There was also no evidence in the record indicating the prosecutor would have considered, or the trial court would have accepted, a different plea.  (See *People v. Perez* (2018) 19 Cal.App.5th 818, 830; *DeJesus*, *supra*, 37 Cal.App.5th at p. 1136.)  Defendant's assertion that he would not have pled but for his counsel's failure to advise him of adverse immigration consequences is not enough.  (*Lee*, *supra*, __ U.S. __ [137 S.Ct. at p. 1967].)  "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies."  (*Ibid*., italics omitted.)  There must also be "contemporaneous evidence to substantiate a defendant's expressed preferences."  (*Ibid*.)

Furthermore, defendant does not even try to call into question the evidence supporting his underlying conviction.  Rather, he admitted at the motion to vacate hearing that he possessed the drugs and never denied he did so for purposes of sale.  The record also indicates defendant admitted to committing the charged offenses to the probation officer.  In addition, the trial court could have looked at the other factors, and, as it determined, defendant had very little incentive to fight the conviction and risk a four- to five-year prison term rather than plead guilty in exchange for probation.  Defendant's ties to the United States were minimal.  He had immigrated to the United States only three and a half years before his arrest, when he was around 18 years old, and both his parents and sisters resided in El Salvador.  And though his declaration says he was married, at the time of the hearing defendant acknowledged he was not married.

15

Undeniably, removal from the United States after creating a life and family here for three decades is distressing. However, the test for prejudice considers what defendant would have done had he been properly advised of immigration consequences *at the time* of the plea, and not the consequences defendant faces now in 2021. (See *Martinez*, *supra*, 57 Cal.4th at p. 564.)

This case is thus distinguishable from *Camacho* and *Mejia*, which involved defendants who had lived in the United States for at least eight years at the time of their crimes, had significant immediate personal family ties, few ties to their country of origin, and in *Mejia* "some lingering questions about the strength of the underlying evidence" of the conviction. (*Mejia*, *supra*, 36 Cal.App.5th at pp. 872-873; see *Camacho*, *supra*, 32 Cal.App.5th at p. 1011.)

This case is also distinguishable from *Vivar*, wherein our Supreme Court concluded "Vivar was prejudiced." (*Vivar*, *supra*, 11 Cal.5th at p. 530.) However, unlike here, "Vivar was brought to this country at age six as a lawful resident, and he attended schools, formed a family, and remained here for 40 years. At the time of his plea, he had two children, two grandchildren, and a wife, all of whom are citizens and all of whom resided in California. By the time he was deported, his wife was undergoing radiation treatment for a thyroid condition. By contrast, Vivar had virtually no ties to Mexico, spoke Spanish 'like an American,' and found it 'difficult to function in Mexican society because people treat [him] like an outsider.' Trial counsel's recollection and contemporaneous notes reflect that Vivar was indeed concerned about the 'consequences'

16

of his plea. All of these constitute contemporaneous objective facts that corroborate Vivar's concern about the immigration consequences of his plea options. [Citation.]" (*Ibid*., citing *Mejia*, *supra*, 36 Cal.App.5th at p. 872.)

The Supreme Court further explained: "Also revealing is the objective evidence of Vivar's state of mind reflected in uncounseled letters he wrote to the court *at or near the time of his plea*. In his first letter, written just a month after his March 2002 plea, Vivar objected to his immigration hold and emphasized that 'I am a legal resident and have been for the past 40 years'; noted that not only his wife and mother are citizens, but his children and grandchildren were all 'born here in Riverside County'; and explained that his oldest child and only son was serving in the United States Air Force and awaiting deployment to the Middle East. He reiterated these concerns in another letter from federal immigration custody a month later, pleading that he be allowed to become 'an asset to my community and not a liability.' Three months after that, Vivar said that counsel never advised him that his plea would result in his deportation and declared that '[i]f I would have been made aware of these facts I would have never plead[ed] Guilty to this Charge.' " (*Vivar*, *supra*, 11 Cal.5th at pp. 530-531, italics added.) The objective, corroborating factors noted in *Vivar* are wholly absent in this case.

Our Supreme Court further emphasized in *Vivar* that the record demonstrated Vivar could have entered a plea avoiding mandatory deportation. (*Vivar*, *supra*, 11 Cal.5th at p. 531.) "Trial counsel's contemporaneous notes indicate the prosecution offered a deal under which Vivar would plead guilty to a single count of burglary (Pen.

17

Code, § 459) with a recommendation that he serve the low term of two years in state prison. With credits, Vivar could have cut that term in half. (See Pen. Code, § 2933, subd. (a).) At the time of his plea, burglary in California was a deportable felony only in particular situations [citation], and the uncontradicted declaration from Vivar's immigration expert stated that Vivar could've entered such a plea without subjecting himself to mandatory deportation. Under these circumstances, we find at least ' "a reasonable probability" ' that he could have tried 'to obtain a better bargain that [did] not include immigration consequences.' [Citation.]" (*Vivar*, at p. 531, quoting *Martinez*, *supra*, 57 Cal.4th at p. 567.)

Our review of the *Lee*, *Vivar*, and *Martinez* factors do not convince us defendant would have opted for trial had he been properly advised of the immigration consequences. Given defendant's minimal ties to the United States, his failure to challenge the strength of the evidence against him, his admission to committing the offenses, and the lack of any other evidence corroborating defendant's declaration and testimony, there was sufficient evidence for the trial court to conclude defendant's declaration and testimony were not credible and self-serving. Accordingly, even if defendant had demonstrated an error affecting his ability to "meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty" under section 1473.7, subdivision (a)(1), we find he did not show he would have rejected the plea if he had been advised properly.

18

Exercising our independent review while deferring to the trial court's credibility determinations and factual findings, we conclude defendant did not meet his burden for relief under section 1473.7.

## DISPOSITION

The trial court's order denying defendant's section 1473.7 motion to vacate is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

SLOUGH
J.

RAPHAEL
J.

19